UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JADE CHESTER,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 1:16-CV-3217-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR AN IMMEDIATE AWARD OF BENEFITS |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF No. 15, 17. Attorney D. James Tree represents Jade Chester (Plaintiff); Special Assistant United States Attorney Justin L. Martin represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 3. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for an immediate award of benefits.

## JURISDICTION

Plaintiff filed an application for Supplemental Security Income (SSI) on July 21, 2010, with an amended disability onset date of July 21, 2010. Tr. 41-42, 129. The application was denied initially and upon reconsideration. Administrative

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

Law Judge (ALJ) Gene Duncan held a hearing on September 5, 2012, Tr. 34-71, and issued an unfavorable decision on October 24, 2012, Tr. 18-30. The Appeals Council denied Plaintiff's request for review; however, on appeal, the undersigned judicial officer issued an order of remand for additional proceedings. Tr. 437-458. ALJ Gordon Griggs held a *de novo* hearing on July 20, 2016, Tr. 371-401, and issued an unfavorable decision on September 13, 2016, Tr. 353-365. The ALJ's September 2016 decision thus became the final decision of the Commissioner, 20 C.F.R. § 404.984(a), which is appealable to the district court. Plaintiff filed this action for judicial review on November 29, 2016. ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on December 4, 1964, and was 46 years old on the amended alleged onset date, July 21, 2010. Tr. 129. Plaintiff obtained his GED in 1983, and attended vocational training in 1994 for mechanics. Tr. 37, 143, 378-379. Plaintiff has prior work as a general laborer. Tr. 379-383. Plaintiff previously testified he can get a job, but after a matter of weeks or months, he will "just walk away from it." Tr. 38. He also stated his depression, anxiety, PTSD, bipolarism and inability to get along with authority figures and others prevent him from working. Tr. 40-41. Plaintiff's "Disability Report" indicates he stopped working on July 1, 2006, because of a lack of work. Tr. 142.

Plaintiff testified at the administrative hearing on September 5, 2012, that he tried to drink every day and would consume about eighteen cans of beer every three or four days. Tr. 40. He stated he would drink in order to function (self-medicate) because he could not afford medication. Tr. 40, 60-61. At the administrative hearing on July 20, 2016, Plaintiff indicated he had been trying to not drink as much, but was still drinking about three fifths of alcohol a week. Tr.

388-389. He indicated he would drink in order to sleep at night. Tr. 389. He testified he "will always be a hardcore alcoholic" but was attempting to get a prescription to help with his alcohol problem. Tr. 392-393. Inpatient treatment and AA had not been successful. Tr. 393-394.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a),

416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On September 13, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 21, 2010, the alleged onset date. Tr. 356. At step two, the ALJ determined Plaintiff had the following severe impairments: left ear hearing loss, partial tinnitus, depressive disorder, post-traumatic stress disorder, and alcohol abuse. Tr. 356. At step three, the ALJ found Plaintiff's impairments met Listings 12.04, 12.06, and 12.09 when his substance abuse was taken into account. Tr. 356. If Plaintiff stopped the substance use, the ALJ found that Plaintiff would still have a severe impairment or combination of impairments, but his impairments would not meet the Listings singly or in combination. Tr. 358.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found Plaintiff could perform medium exertion level work, but with the following limitations: he would need to rest one to two minutes every hour; he is able to work independently on assignments that are focused on using tools and working

with objects rather than people; he is limited to occasional exposure to very loud noise levels; he would require frequent supervision for the first month on the job and have no direct access to drugs or alcohol; he is unsuited for security, medical or health work; he is likely to be off task and unproductive in small increments up to 4.5% of an average work day; he is limited to simple work-related decisions; he is limited to superficial interaction with the public and occasional interaction with co-workers; and he is not well suited to fast paced production work or to conveyor belt work. Tr. 359-360.

At step four, the ALJ found Plaintiff was unable to perform his past relevant work as a construction worker II. Tr. 363. At step five, the ALJ determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of janitor, packager and laundry worker. Tr. 364-365. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from July 21, 2010, the alleged onset date, through the date of the ALJ's decision, September 13, 2016. Tr. 364-365.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by (1) improperly assessing the medical source opinion evidence of record; (2) not including all of Plaintiff's functional limitations in the hypothetical question posed to the vocational expert and finding Plaintiff could perform the jobs of packager and laundry worker despite the specific exclusion of those jobs by the vocational expert, and (3) failing to provide specific, clear and convincing reasons for rejecting Plaintiff's subjective complaints.

# DISCUSSION

## A. Medical Source Opinions

Plaintiff argues that the ALJ erred in formulating his RFC determination by improperly assessing the medical opinion evidence of record. ECF No. 15 at 6-16. Plaintiff specifically challenges the ALJ's assessment of the medical opinions of (1) Alfred Scottolini, M.D., (2) Roland Dougherty, Ph.D., (3) Donna M. Veraldi, Ph.D., (4) reviewers Beth Fitterer, Ph.D., and Mary A. Gentile, Ph.D., and (5) therapist Taylor Klein, M.S. *Id*.

The ALJ determined Plaintiff could perform medium exertion level work, but with the following limitations: he would need to rest one to two minutes every hour; he is able to work independently on assignments that are focused on using tools and working with objects rather than people; he is limited to occasional exposure to very loud noise levels; he would require frequent supervision for the first month on the job and have no direct access to drugs or alcohol; he is unsuited for security, medical or health work; he is likely to be off task and unproductive in small increments up to 4.5% of an average work day; he is limited to simple work-related decisions; he is limited to superficial interaction with the public and occasional interaction with co-workers; and he is not well suited to fast paced production work or to conveyor belt work. Tr. 359-360. The Court finds the ALJ properly assessed the medical opinion evidence of record in formulating the foregoing RFC determination in this case. *See infra.*

### 1. Alfred Scottolini, M.D.

State agency medical consultant Alfred Scottolini, M.D. reviewed Plaintiff's medical records in December 2010, noting a diagnosis of mild to moderate sensorineural loss in the right ear. Tr. 246. Dr. Scottolini opined that Plaintiff should "avoid all exposure to noise representing acoustic trauma." Tr. 246. He further opined that Plaintiff should avoid even moderate exposure to hazards (machinery, heights, etc.). Tr. 246.

The ALJ gave significant weight to Dr. Scottolini's opinion. Tr. 361. The ALJ accounted for the hearing impairment assessed by Dr. Scottolini by limiting Plaintiff to only occasional exposure to very loud noise levels. Tr. 360. The ALJ additionally accounted for Dr. Scottolini's opinion that Plaintiff should avoid hazards by finding Plaintiff not fit for fast paced production or conveyor belt work. Tr. 360. Contrary to Plaintiff's assertions, ECF No. 15 at 6-8, this is not an unreasonable interpretation of Dr. Scottolini's credited opinion. *See Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005) (holding "[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation").

### 2. Roland Dougherty, Ph.D.

Dr. Dougherty completed a consultative evaluation of Plaintiff in December 2010. Tr. 250-258. Dr. Dougherty concluded Plaintiff's social skills were "good," his "thinking was basically logical and goal-directed," and his "intelligence appears to be good," and opined Plaintiff "should be able to understand, remember, and follow both simple and complex instructions." Tr. 258.

Plaintiff complains that despite according great weight to Dr. Dougherty's opinion, Tr. 362, the ALJ failed to account for Dr. Dougherty's notations that Plaintiff could not manage his own funds prudently, Plaintiff's prognosis was guarded and dependent on using appropriate mental health and medication resources, and Plaintiff's work history consisted of only brief employment periods, ECF No. 15 at 8-9 *citing* Tr. 257-258.

Residual functional capacity is an assessment of the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545. In formulating an RFC determination, the ALJ considers the record as a whole and translates and incorporates medical evidence into a succinct RFC assessment. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (finding the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC).

Plaintiff's opening brief does not assert what specific additional limitations the ALJ should have included in his RFC determination to account for the foregoing notations by Dr. Dougherty. Moreover, the undersigned finds as follows: (1) Plaintiff's ability to manage his own funds is not relevant to an assessment of the degree of work he could perform; (2) Plaintiff's prognosis is not a work related limitation that could be incorporated into an RFC determination; and (3) Plaintiff's limited work history is not relevant to a finding regarding the most Plaintiff could do despite his limitations. The ALJ's RFC determination adequately incorporated the December 2010 opinions of Dr. Dougherty.

### 3. Donna M. Veraldi, Ph.D.

At the first administrative hearing, Dr. Veraldi testified as a medical expert. Tr. 50-58. Dr. Veraldi stated that Plaintiff "would function better if he was sober," and that, without substance use, Plaintiff's other mental impairments, particularly his PTSD, would cause mild limitations in activities of daily living, moderate limitations in social functioning, and moderate limitations in concentration, persistence, and pace. Tr. 54.

Plaintiff asserts that despite giving "significant" weight to Dr. Veraldi's testimony, Tr. 362, the ALJ failed to credit Dr. Veraldi's agreement with the assessment of M. Gabriela Mondragon, MSW, that Plaintiff had marked, or very significant, limitation in his ability to respond appropriately to and tolerate the pressures and expectations of a work setting, ECF No. 15 at 10-11.

First, Dr. Veraldi did not necessarily "agree" with Ms. Mondragon's assessment. Tr. 56-57. With respect to the "marked" limitations, Dr. Veraldi testified as follows:

> I think that I would not rate those that severely. But, obviously they felt a need to – they felt that he would be at a marked level even sober. So, that's their opinion. I would probably rate them a little bit less severely, but, that [is] sometimes simpl[y] a difference of opinion.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

Tr. 56. With specific regard to the marked limitation assessed regarding Plaintiff's ability to respond to and tolerate a normal work setting, Dr. Veraldi stated "[t]hey *may* be accurate on that. He is a person who has not worked very much. He was just getting out of jail. There may be a number of skills that he does not possess or, or function very well with, so, you may be able to argue about sustainability with . . . his problems." Tr. 56-57 (emphasis added). Dr. Veraldi did not actually "agree" with Ms. Mondragon's assessment as averred by Plaintiff.

In any event, the Court finds the ALJ adequately interpreted Dr. Veraldi's opinions and accounted for the limitations assessed by Dr. Veraldi in the ultimate RFC determination by limiting Plaintiff to simple work and jobs that allowed him to work independently on assignments focused on using tools, with superficial interaction with the public, the need for rest one to two minutes every hour, frequent supervision during the first month on the job, and the need to be off task and unproductive in small increments up to 4.5% of an average work day.

### 4. Beth Fitterer, Ph.D., and Mary A. Gentile, Ph.D.

In December 2010, Dr. Fitterer reviewed the record and completed a mental RFC assessment and a psychiatric review technique form. Tr. 259-275. Dr. Fitterer found Plaintiff not significantly limited in most categories of functioning but did assess moderate limitations with Plaintiff's ability to complete a normal work-day and workweek without interruptions from his symptoms, to interact appropriately with the general public and to get along with coworkers or peers without distracting them. Tr. 260. Dr. Fitterer assessed no marked limitations. Tr. 260. Dr. Gentile later reviewed Dr. Fitterer's opinions and affirmed the findings. Tr. 294.

The ALJ gave the opinions of Drs. Fitterer and Gentile "significant weight," finding they were consistent with the longitudinal treatment records as well as other evidence of record, including Plaintiff's inconsistent reporting, lack of treatment and failure to take medication. Tr. 362.

Plaintiff argues that despite according significant weight to the opinions of these medical professionals, the ALJ erred by not including in the RFC determination the moderate limitation in completing a workday or workweek and the conclusion that his concentration, persistence and pace would wane periodically. ECF No. 15 at 11-12.

Contrary to Plaintiff's assertion, and as with Dr. Veraldi, the Court finds the ALJ properly accounted for Plaintiff's moderate limitations and concentration, persistence and pace finding by restricting him to simple work and jobs that allowed him to work independently, with superficial interaction with the public, the need for rest one to two minutes every hour, frequent supervision during the first month on the job, and the need to be off task and unproductive in small increments up to 4.5% of an average work day. Plaintiff's argument regarding Drs. Fitterer and Gentile is without merit.

### 5. Taylor Klein, M.S.

Plaintiff's therapist, Ms. Klein, completed a check-box mental source statement in June 2016. Tr. 604-606. Ms. Klein assessed several moderate limitations, found Plaintiff would have a marked limitation in accepting instructions from supervisors, opined Plaintiff would be off task up to 20% of the time, and opined Plaintiff would miss three days of work per month. *Id*.

Only acceptable medical sources, including licensed physicians and psychologists, can provide evidence to establish an impairment. 20 C.F.R. § 416.913(a). The ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist or social worker. 20 C.F.R. § 416.913(d). An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. § 416.913(d); SSR 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232. An ALJ must give "germane" reasons to discount evidence from "other sources." *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993). Germane reasons to discount an

opinion include contradictory opinions and lack of support in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

The ALJ accorded Ms. Klein's opinion "little weight" because it was a check-box form, Ms. Klein did not account for Plaintiff's alcohol use, and Ms. Klein had only treated Plaintiff on one occasion before filling out the form. Tr. 362.

A check-box form is entitled to little weight. *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (stating that the ALJ's rejection of a check-off report that did not contain an explanation of the bases for the conclusions made was permissible). Contrary to Plaintiff's argument, ECF No. 15 at 16, the comments section to the check-box report fails to adequately provide support for the conclusions reached on the form. Furthermore, as determined by the ALJ, there is no indication Ms. Klein took into consideration Plaintiff's well-documented alcohol abuse issues when completing this check-box report. Although the Court agrees with Plaintiff that the ALJ's statement that Plaintiff had only seen Ms. Klein on one prior occasion before the assessment is not a germane reason to discount the opinion, the ALJ's other reasons for discounting the opinion are germane. Accordingly, the ALJ's decision to accord Ms. Klein's opinion "little weight" is sufficiently supported.

**B.  Plaintiff's Subjective Complaints**

Plaintiff argues the ALJ erred by failing to provide valid reasons for rejecting his subjective complaints. ECF No. 15 at 17-20. The Court agrees.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is

not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. Tr. 360. The ALJ listed the following three reasons for discounting Plaintiff's credibility: (1) objective medical findings, including reports that his PTSD symptoms had been controlled by therapy, were not fully consistent with the degree of alleged mental impairments; (2) the record reflected an inconsistent statement by Plaintiff to Nurse Liu; and (3) Plaintiff had been noncompliant with medical advice. Tr. 361. For the reasons discussed below, the Court finds the ALJ's rationale is not supported by substantial evidence.

### 1. Objective Medical Evidence

The ALJ first found that the objective medical evidence was not consistent with the degree of mental health impairment alleged by Plaintiff. Tr. 361. The ALJ specifically noted a 2010 report that Plaintiff's PTSD had been controlled by past therapy. Tr. 289.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating a claimant's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991). Moreover, an ALJ may rely on the effectiveness of treatment to find a plaintiff's testimony unpersuasive. *See, e.g., Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).

Here, the ALJ merely cited the 2010 medical reports of Suzanne L. Rodriguez, MSW, which document Plaintiff's insomnia and difficulty with sleep.

Tr. 285-290. Ms. Rodriguez noted Plaintiff believed his PTSD had been controlled with therapy. Tr. 289. However, the ALJ did not discuss other evidence from the same time period that supports Plaintiff's allegations of mental health symptoms. For example, Russell Anderson observed marked depression in December 2009, Tr. 229, and Ms. Mondragon determined Plaintiff had a number of moderate and marked mental health limitations in June 2010, Tr. 222.[1] More recently, in June 2016, Plaintiff's therapist, Ms. Klein,[2] found Plaintiff displayed a number of mental health limitations. Tr. 604-606. A lack of supporting objective medical evidence does not appear to be a clear and convincing reason to discount Plaintiff's allegations in this case; however, even if this factor was supported by substantial evidence, it would impermissibly be the sole valid reason for finding Plaintiff less than fully credible. *See infra.*

### 2. Inconsistent Statement

The ALJ also determined Plaintiff lacked credibility for not reporting a history of alcohol use to Edward Liu, ARNP, in April 2012. Tr. 348.

In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When a claimant fails to be a reliable historian, "this lack of candor carries over" to other portions of his or her testimony. *Thomas*, 278 F.3d at 959.

Here, the record reflects Plaintiff disclosed his history of alcohol abuse to Nurse Liu in January 2011, Tr. 283, as well as to other medical professionals at

---

[1] The ALJ accorded "little weight" to the opinions of these medical professionals, Tr. 362, and Plaintiff has not contested that determination.

[2] As discussed above, the ALJ provided germane reasons for according little weight to Ms. Klein's check-box report. *See supra.*

Yakima Neighborhood Health Services. Plaintiff's history with alcohol was known to Nurse Liu, regardless of whether it was documented in the April 2012 report. At most, the April 2012 report of "no history of alcohol use" is a minor discrepancy. It is not a clear and convincing reason to discredit Plaintiff.

### 3. Non-Compliance with Medical Advice

The ALJ next determined the evidence of record reflected Plaintiff was noncompliant with recommended treatment. Tr. 361.

Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment can cast doubt on a claimant's subjective complaints. 20 C.F.R. §§ 404.1530, 416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, the failure to seek treatment is generally excused if the claimant cannot afford it. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

In this case, Plaintiff claimed an inability to afford treatment. Tr. 391. The ALJ countered with evidence that Plaintiff had insurance in March of 2014, yet there was no record of further counseling until March of 2016. Tr. 361. Nevertheless, there is no evidence indicating how long Plaintiff remained medically insured or regarding Plaintiff's ability to otherwise afford treatment during the relevant time period. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (finding "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." (internal quotes omitted)).

The ALJ further noted that Plaintiff continued to consume alcohol despite recommendations that he stop. *See e.g. Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984) (concluding the Commissioner may not deny benefits solely based on a claimant's alcohol or tobacco abuse absent a specific finding that a claimant is able voluntarily to stop; however, a claimant's failure to quit smoking or drinking despite medical advice to the contrary may be a factor considered when weighing a

claimant's credibility). There is nothing in the record indicating Plaintiff's continued consumption of alcohol diminished the reliability of his subjective complaints or otherwise negatively impacted his credibility.

Plaintiff's alleged noncompliance with medical care/failure to follow medical treatment recommendations is not a clear and convincing reason to discount Plaintiff's credibility.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). This Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review. 42 U.S.C. § 405(g). It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. Still, based on the foregoing, the Court concludes the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony in this case. *See Varney v. Sec'y of Health and Human Servs*. (*Varney I*), 846 F.2d 581, 584 (9th Cir.), modified on reh'g, 859 F.2d 1396 (*Varney II*) (9th Cir. 1988) (holding that when an ALJ fails to provide specific, articulable reasons to support an adverse credibility finding, the court should "not remand solely to allow the ALJ to make specific findings regarding that testimony . . . [r]ather, [it should] take that testimony to be established as true.").

## C. Step Five

Plaintiff argues that the ALJ erred at step five of the sequential evaluation process by finding Plaintiff could adjust to other work in the national economy. ECF No. 15 at 16-17.

At the administrative hearing held on July 20, 2016, vocational expert Mark Harrington testified that a hypothetical individual with the RFC as determined by the ALJ could perform the medium exertion level jobs of janitor, packager and

laundry worker. Tr. 396-397. After further discussion regarding the need to rest one or two minutes every hour, Mr. Harrington testified that the restriction would eliminate the packager and laundry worker jobs. Tr. 397-398. When asked about other positions at lighter exertion levels, Mr. Harrington also identified the jobs of cleaner/housekeeper and deliverer. Tr. 398-399. The vocational expert testified that the three identified jobs, janitor, cleaner/housekeeper and deliverer, were performed at a moderate noise intensity level. Tr. 399.

Further vocational expert testimony revealed that employers would tolerate only up to five unscheduled absences in a 12-month period, and, if an employee was off task 10 to 15 percent of the time, the number of jobs would be eroded and such an employee would be at high risk of termination. Tr. 400.

At the administrative hearing held on September 5, 2012, vocational expert Trevor Duncan testified that if an employee was off task more than 10 percent of the time, they would more than likely lose their job. Tr. 70. He further stated that if an employee routinely has confrontations with a supervisor, or even one physical confrontation or one walk off the job, it would likely result in termination. Tr. 70.

The ALJ, at step five, determined that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including the jobs of janitor, packager and laundry worker. Tr. 364-365. It is apparent the ALJ erred by identifying the jobs of packager and laundry worker, jobs specifically eliminated by the vocational expert based on the RFC restriction of a need to rest one or two minutes every hour. Tr. 397-398. Thus, only the job of janitor is supported.[3]

---

[3]As discussed above, the vocational expert identified two light exertion level positions Plaintiff could also perform, cleaner/housekeeper and deliverer, Tr. 398-399, but the ALJ made no findings with respect to these other jobs.

Nevertheless, after crediting Plaintiff's testimony,[4] and considering vocational expert testimony regarding employers not tolerating more than five unscheduled absences in a 12-month period, Tr. 400, or confrontations with supervisors, Tr. 70, it is clear there is no work in the national economy that Plaintiff would be able to perform.

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, the Court finds the ALJ's decision is not supported by substantial evidence. The Court has the discretion to remand the case for additional evidence and finding or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand for additional evidence is appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989). In this case, the record is adequate for a proper determination to be made and further development is not necessary.

As discussed above, the ALJ erred by failing to provide appropriate rationale for rejecting the testimony of Plaintiff. *Supra*. After taking into consideration the testimony of Plaintiff and the vocational experts, the evidence of record reveals Plaintiff was not capable of performing any work. The ALJ's determination that Plaintiff could perform other work existing in substantial numbers in the national economy is not supported by substantial evidence. Accordingly, this case should be remanded for an immediate award of benefits.

---

[4]Plaintiff testified he has good days, when he is not feeling significantly depressed or anxious, only once or twice a week. Tr. 390. He stated that on bad days, the other five or six days of the week, "you can't get me out of the house." Tr. 391.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for an immediate award of benefits.

4. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered in favor of PLAINTIFF** and the file shall be **CLOSED**.

DATED November 6, 2017.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE